Good morning, everyone. The United States Court of Appeals is pleased to be holding oral arguments here in the historic courthouse in Richmond, Virginia. This is the first time our court has sat in Richmond. Some of you may know we sat yesterday at the University of Virginia Law School in Charlottesville, and we'll be sitting one panel tomorrow at the University of Richmond Law School. This is a normal part of our pursuits pursuant to the statute creating the court in 1982. We were commissioned by Congress, since we have national jurisdiction geographically, to sit around the country from time to time. So every year we depart Washington and go to another city where a regional circuit sits, and hence we're here today and pleased to be so. We're very grateful for the fine assistance of the circuit executive and clerk and other personnel, including the security officers of this courthouse, and also grateful to our own staff. Just one further footnote, our cases and our panels are assembled randomly, so the composition of this panel and this set of cases is the same as we have every month, regardless of where we're sitting. With that, let's get to the business at hand. I first mention that there are two appeals being submitted today on the briefs without oral argument, namely Appeal Number 06-1198, El Ancanto v. La Tortilla Factory, and Appeal Number 06-3242, Sensenin v. Department of Treasury, and as well a case of an Appeal Number 06-3138, Dombrava v. Office of Personnel Management, likewise being handled on the briefs. Three cases will be argued. We'll hear first argument in Appeal Number 06-1027, Freeman v. Playtex Products. Mr. Starr, good morning. Good morning, Your Honor. Welcome, and please proceed. Thank you, Your Honor. May it please the Court. Good morning. My name is Mark Starr. I represent the appellants in this case. You might need to adjust the microphone, get it a little higher so we can hear you distinctly. Thank you. Yes, Your Honor. That's better. In the District Court's Markman order, in this case, Your Honor, the Court correctly construed the key limitation in this appeal, which is a slit through a planar section of a thin membrane. So there's agreement between the parties and also the Court as to the correct construction of planar? Yes, Your Honor. So it's only the application of the construction that's the source of dispute? That is correct, Your Honor. And you say the application was erroneous because? That's correct, Your Honor. The Court determined that a planar section of a thin membrane meant that the slit through the thin membrane had to be through a section of the membrane that had a flat, two-dimensional quality. The Court also indicated in its Markman order that a planar structure need not be perfectly flat because a membrane, a flexible, resilient membrane cannot be perfectly flat. When it's in use or when it's not in use? Both. The Court also noted in its Markman order that the 347 patented issue in this case claims a membrane that has a slit located where the membrane is relatively flat. So the District Court taught us a few things about what it means to have a flat, two-dimensional quality. Is there anything in the written description or elsewhere in the patent suggesting that your client was attempting to obtain protection for curved membranes? My client was attempting to claim protection for membranes having a flat, two-dimensional quality. Planar. Planar. Yes, Your Honor. Planar. The District Court could have adopted Platex's proffered claim construction. That planar meant perfectly flat. That planar meant nothing more than... Let's focus on what the Court did. What the Court did, which you agree with, and then how it applied it, which you disagree with. Let's not worry about what the Court could have done. What it did do, you both say is fine, except in the application. Correct. What's the error in the application? The application is that Platex's membrane, I concede, if you look at the membrane overall, the overall shape of the thin membrane, if you look at the surfaces of the membrane, upper and lower, have very, very, very slightly curved surfaces. It's a parabolic shape, isn't it? I wouldn't describe it as parabolic. I'd describe it as slightly concave as you view that membrane from the top. Okay, whatever the degree is, is it continuous across the full expanse of the part of the membrane in which the slit is located? It's my understanding that, yes, it is. But the focus, the problem, it's not a problem. It's an interesting thing about these particular claims. There is a limitation that talks about a thin membrane. The thin membrane itself, as the District Court correctly noted, was never amended, never discussed, and the overall membrane itself can take any of a variety of shapes. So we know that the thin membrane itself is really not an issue, the overall shape of the thin membrane. Well, the problem arises is the planar limitation was added, wasn't it? That's correct, Your Honor. To avoid prior art. That's correct. It was added to avoid the prior art, and specifically the prior art was a patent that issued to a gentleman by the name of Coy. And Coy taught a valve that is radically different from the valve used either in the 347 patent or the Playtex project. Coy had two planes that intersected, as I understand it. Coy essentially has two surfaces that converge. Right. Coy is not a suction-operated valve like Playtex's valve or the 347 valve. In fact, Coy, if you apply suction to the Coy valve, all the Coy valve does is seal even tighter. All that says is the amendment could have been narrower and still avoided Coy, but the amendment was what the prosecutor chose to make it, namely the word planar. The thing I'm concerned about, I don't know about the other two judges, is a fair notice to competitors. Once the amendment says planar, why shouldn't competitors be permitted to rely on that and to design around, for example, by having a membrane that's otherwise similar except not planar? Your Honor, I absolutely agree that the notice function of claims is critical. And in this case, I think a reasonable competitor, reading the prosecution history, looking at the mechanism of Coy, which is night and day from Playtex's own mechanism. But the reader doesn't only look at what the prior art was that was the problem. It also looks at what the solution was selected out of all the words in the world by the prosecutor. He or she selected planar. Maybe it's more restrictive than it had to be, but it says what it says. It's his choice. Why aren't he and his client fairly stuck with it? And isn't this a question of fact as well? Which question? Whether the accused meets the planar limitation. Isn't this a question of fact and we owe deference to the court? This is a question of fact. I don't believe in the summary judgment context you do owe deference to the court. In this case. So the question here is whether a reasonable jury could have found that despite being somewhat curved, the accused device membrane is close enough to planar to meet the definition of planar. No, not close enough. Close enough is the equivalence argument that I'd be glad to make. Within the meaning of planar as defined by the court. As defined by the court, the court said that planar means having a flat two-dimensional quality. Now, query, what did the court mean by the quality of being flat and two-dimensional? Particularly when you're talking about a structure, a membrane. Any structure has three dimensions or it wouldn't be a structure, a thing. Of course it's three-dimensional and of course the district judge understood that. And the district judge also said that planar structures do not have to be perfectly flat, that they can be relatively flat. And the court recognized that in the literal infringement context, there was. Would you agree then that the question is whether a reasonable juror could find that the accused membrane is relatively flat? Yes, Your Honor. Okay. And, I'm sorry. Now, what's your basis of saying, oh, yes, it would have been perfectly reasonable for the jury to conclude that the curved membrane of the accused device was relatively flat? Do you rely, Mr. Starr, on the Sorum Declaration, the Sorum Testimony? Your Honor, yes. I would rely, at least in part, on the Sorum Declaration, which the court dismissed as conclusory. Now, I believe, Your Honor, the Sorum Declaration may be many things, but it's not conclusory. Dr. Sorum was going to tell the jury how a structure having length and depth and thickness could be deemed to have a flat two-dimensional quality. And Dr. Sorum is an expert in membranes. So he was going to tell the jury how, first of all, the platex membrane had a flat two-dimensional quality, how it was relatively flat. He was going to describe the nature of membranes, which themselves, by their very nature, are resilient and flexible and sag and move upward and downward during operation and sag during rest. But also, the jury should have seen and could have seen the actual sample of the platex valve. They could have looked at that, and the question then becomes, is the shape of the membrane at the location of that slit relatively flat? And a reasonable jury absolutely could have determined that. And furthermore, I would direct your attention— Do we have a reliable depiction of the curvature of the accused membrane? We do, Your Honor. Where is that? I did a very— 1078? I'm sorry? Is it 1078? I would refer to the court at A4. I couldn't find anything that wasn't so minuscule as to make it impossible to estimate the degree of curvature. We don't have the device here, right? I do have a device here. I've also got the engineering drawing, which the district court reproduced on page A4. That didn't seem to be much more helpful than the patent drawing. Well, the same is to start. The curvature can be seen if you take the upper right-hand picture, and the arrow on the right goes up, dotted line, showing a little bit of a depression there. Yes, Your Honor. That's the curvature. That's the curvature. In fact, as you look at that drawing in the upper right-hand corner, the membrane at issue is the membrane on the left. If you look at the membrane on the right, that's actually a membrane that in the platex cup is used to vent. Oh, I see. Okay. The one on the left is the membrane that is used to open and close when suction is applied. So if we read the SORM declaration, we ought to be able to decide, if I understand you correctly, whether a reasonable juror relying thereon could have found that the membrane on the left is relatively flat. Yes, Your Honor. Anything else besides the SORM declaration critical to your case for saying there's a triable issue here? The SORM declaration, the drawing depicted on the district court's order on page A4, and the actual product that we would present to the jury, Your Honor. All right. Well, that's very clear. Do you want to save the rest of your time for rebuttal? You have just under four minutes. Yes, Your Honor, I would. Thank you, sir. Mr. Lehr, good morning to you. Thank you, Your Honor. Welcome to this very handsome historic courtroom. May it please the court, good morning, Your Honors. The central issue on this appeal before the court this morning turns entirely, and I think it was picked up by Your Honors just now, on whether the court's construction below means relatively flat. Both Freeman in their briefs and Dr. Sorum in his declaration repeatedly refer to that as the standard. And I would submit to Your Honors that is not the standard. That is not how Judge Lungstrom defined the term planar section. So relatively flat are not the district judge's words? That is correct, sir. They're Mr. Starr's words? Yes, sir. Well, remind us of precisely what the district judge wrote. The district court said precisely that planar means flat, having a two-dimensional quality. And so when I was thinking about this last night, I thought to myself, well, why wouldn't you say just flat? And that seems an obvious question. And the answer to that can be found in the district court's opinion. This is at footnote three, A32 of the joint appendix. In these claims, Your Honors, there were two uses of the word planar. And the court first addressed the term planar with respect to the lid portion of the sippy cup. And the court noted that the term plane, if you look it up in the dictionary, says a surface or something having two dimensions. And Freeman actually argued below, well, that can't be the right construction because clearly a lid on a sippy cup has three dimensions, so that can't be right. Judge Lungstrom then looked at the term planar and said, well, In other words, not purely on a surface, not purely two-dimensional, that it can have some dimension. And, of course, that's precisely what we're talking about here. Planar in the context of a lid having three dimensions. How is your membrane constructed? Is it heat-molded to have curvature, or is the curvature accidental? Does it perform any useful function? What's really going on here? Your Honor, that's a very good question, and we address it in our brief. The answer is we specifically, intentionally mold it to have a curve. Judge Schall pointed to the appendix site 1078 where there's the engineering drawing, and you will see that there is an intentional curvature. Created how? I believe it's an injection molding process. Injection molding. And the function of which is? Well, the undisputed testimony of Playtex's engineer, Mr. Manganiello, also the inventor on the Playtex patent, testified that we put that curve in to prevent what is known as salt and pepper leakage. So when an infant, there's two ways these cups can leak, Your Honor. If you just tip it over, it seldom leaks. But as we all know, having young children, they don't do that. They shake it up and down, and it's called salt and pepper leakage. And the determination that was made by the Playtex engineers, Your Honor, was that a curved membrane would prevent salt and pepper leakage. So then when Mr. Starr talks about how membranes, because they're inherently pliable, sag, presumably under the force of gravity, that's not what causes the curvature in your membrane. Your curvature is deliberate, not gravity caused. Yes, sir. And the notion that you can somehow account for this as an engineering artifact, that's simply not the case, and I don't believe it's disputed by the other side. This is intentionally a curved membrane, Now, as to the sorum affidavit, is your view that it's just insufficient on its face, or somehow it has been countered or neutralized by evidentiary materials you submitted on the summary judgment proceeding? The former, Your Honor, and I would submit for two reasons. The first reason is if you look at the operative paragraph of the sorum declaration, he performs his analysis on the basis of a construction of relatively flat. He says, my opinion is that the Playtex membrane is relatively flat. Where did he get that if that was not the phrase ever used by Judge Lundstrom? Well, Your Honor, let me be specific. Judge Lundstrom, when discussing the Koi valve in his opinion in a fairly casual way, says, well, the membrane of the 347 patent is different from Koi in that it is relatively flat. That was not his adopted construction, however. And I would submit, Your Honor, that because Judge Lundstrom used the same definition for planar, both with respect to the lid and with respect to the membrane, it would tell you why he wouldn't have such a construction. Because the planar lid is expressly modified by the well-known term substantially. So it's a substantially planar cover section with respect to the lid. If you use the same construction for planar with respect to both the lid and the membrane, then the earlier limitation in the claim would mean substantially relatively flat having a two-dimensional quality. And we would respectfully submit that just doesn't make any sense, Your Honor. So that's the first point, Your Honor, that Sorum used the incorrect standard. He did not use the judge's definition. The second point, Your Honor, is that the only analysis Dr. Sorum proffers in his declaration is this notion of coordinate systems. And my friends on the other side say, well, that was implicit in the judge's claim construction. Well, if you look at the judge's summary judgment order, he says not only was it not implicit, I expressly rejected the notion of a coordinate system to determine whether something is planar or not. So- Mr. Talia, what do you understand to be the thrust of Mr. Sorum's declaration on this coordinate system? How does he actually say this establishes that it meets the limitations? I'll do candor, Your Honor. Accused product. And I'll do candor, Your Honor. I have to say I'm a little perplexed by Dr. Sorum's declaration, as was the district court, because there's frankly some very inconsistent language in the operative paragraph. But here's what I understand. What do you understand of the concept? The concept is thin in comparison to length and width. Well, that's almost like the definition of a membrane. That doesn't really help us. Of course it's extremely thin compared to its length or width. All membranes are like that. Your Honor, put your finger right on it. Indeed, it would be redundant in the context of these claims because the membrane that is claimed is a thin membrane. Therefore, if Dr. Sorum is correct, thin in comparison to length and width, why have planar? Every membrane that is a thin membrane would be planar. And, Judge Shaw, the other point is my friends on the other side take the position, well, Dr. Sorum's position should be credited. But it was expressly rejected by Judge Longstrom as the claim construction for planar below. So it stands to reason that the platex membrane can't infringe on a rejected definition of planar. Is it an overstatement to say your view of this declaration is that it's a complete nullity because it uses the wrong yardstick? Yes, sir. It is my position. I'm not overstating your disdain for the Sorum declaration. No, no. Probative value. All due respect to Dr. Sorum, I understand why they took the position that they took. The fact of the matter is, Your Honor, the construction on its face does not read to a wholly curved membrane. And apropos of that. Now, when you say wholly curved, you're representing that throughout its length or width, the surface of the membrane in which the slit is found is continually curved. Yes, Your Honor. There's no flat portion at all. Yes, Your Honor. In fact, Judge Longstrom expressly noted, and we highlighted in our brief, that even if you take the flat earth example and you say, well, gosh, if we minutely dissect this curved object, we can sense that there's a flat portion of it somewhere. The slit in the platex membrane, and this is in the record and in our briefs, runs almost the entire diameter of the slit. That is clearly visible in the diagrams that you've supplied. Yes, sir. Do you understand that to be what Mr. Starr is arguing via the Sorum declaration, that there is at least some portion of the curvature in the accused device that can be viewed as flat using this coordinate system? Your Honor, I don't understand that to be the case. What I understand to be the case is that he's arguing thin in relation to length and width, so that if you have a very large curvature and a very small dimension, that one could argue that, therefore, it's relatively flat. I don't understand Freeman to argue at all that there's any portion of this membrane which is, in fact, flat. And the engineering drawing of 1078 establishes that it is not flat. I'll touch briefly on – yes, Your Honor? Anything further, you should get to it now. Very briefly on the doctrine of equivalence, it was not even addressed in the Gray brief. We would submit that the equivalent, as Your Honor pointed out, was written – the limitation was written very broadly. It wasn't written to – I didn't understand Mr. Starr to argue this morning for equivalent infringement. His argument seems to be purely that he's entitled to a jury decision as to literal infringement. The only reason I raise it, Your Honor, it was in the Blue brief and we addressed it in the Red brief, but if Your Honors don't feel they need to hear that, I'll just sit down unless there are any further questions. All right, thank you, Mr. Laird. Mr. Starr, rebuttal. Mr. Starr, sorry to jump on you. You get up for your rebuttal. But if I can, I want to make sure I understand precisely what your argument is with respect to Dr. Sorum's coordinate system. I mean, you heard my exchange with Mr. Laird there. How can you enlighten me a little bit more on that, what the concept is here? Let me – I need to back up a little bit. Mr. Laird and Platex contend that this coordinate system that Dr. Sorum invoked was something that was made out of whole cloth in this case. In fact- You mean a membrane. Whole silicone. In fact, a coordinate system, the coordinate system is explicit in the district court's construction of a planar section. The district court said that a planar section through a thin membrane has a flat, two-dimensional quality. And if reference to two-dimensional is not reference to a coordinate system, I'm not sure what it is. So what we retain Dr. Sorum to do, to tell the jury, is that how in the world can a structure that has concededly thickness properly be referred to under the court's own claim construction as having a flat, two-dimensional quality? And what Dr. Sorum did in about two pages of his declaration was explain that in the world of membranes, there are two-dimensional membranes that are modeled in two dimensions, whether they're flat, relatively flat, or otherwise. And there are three-dimensional membranes that cannot be modeled in two dimensions. Dr. Sorum was trying to apply- Nothing can ever be perfectly two-dimensional, can it? That's a good- That's the problem here, that a surface can be two-dimensional, but a surface in and of itself is not structure. A membrane is structure in that it's got thickness and is therefore three-dimensional. So what Dr. Sorum was trying to tell a jury and trying to tell Judge Lundstrom is how can a structure that has thickness be literally called a structure that has a flat, two-dimensional quality? And he invoked the two-dimensional versus three-dimensional system in order to do that. I think, Your Honor, you raised the point, what would a reasonable competitor believe was surrendered here? And a reasonable competitor knows and would have looked at the structure of COIL, a duckbill valve that cannot open via suction, is clearly three-dimensional, cannot be modeled in two dimensions, versus a platex membrane that is clearly relatively flat, and the 347 patent membrane, which is clearly relatively flat. Mr. Starr, just to clarify, Mr. Laird says you're not still arguing equivalence infringement because you didn't raise it in your oral argument this morning. You still are asserting equivalence infringement. Absolutely, Your Honor. Yes, I am. We don't waive an argument because you didn't choose to argue it this morning, as long as you had it in your blue brief. It is in the blue brief, and I would be glad to argue that. Again, it's laid out in the blue brief that we believe that the rationale for the amendment here was to distinguish COIL-type valves, which have a radically different sealing mechanism and structure at the location of the opening, than do either the 347 patent membrane or the platex membrane. Well, he doesn't dispute what the purpose of the amendment was. The issue is what's the effect of the solution chosen. And you say, well, even though we used a broader than necessary word, namely planner, a good patent lawyer would read the prosecution history and see that we meant planner in a narrower fashion than might in some other context have been the case, and therefore it should be understood in that narrower fashion. It seems to me that's the essential dispute here. What's the correct understanding of planner based on what the judge said and whatever we can infer from that? And the judge did say, again, that a flat two-dimensional quality means that that particular structure is relatively flat, and I would refer you to page 832. Well, he says relatively flat was used in a totally different context and is a separate statement from having a two-dimensional quality. I would disagree. In fact, on page 832, the court, the district court, raised the question of what does the word planner mean. And the word planner appears twice in the claim. They were not distinguishing between the two different uses. They were trying to get their head around what does planner mean in the context of structure. Including the lid and including the membrane. All right. I think we have positions of both sides well in mind, very clearly stated by both of you. We thank you very much. We'll take the appeal under advisement. Thank you.